UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH JACOBS,<br><br>        Plaintiff,<br>    v.<br><br>BIOSPECIFICS TECHNOLOGIES CORP., JENNIFER CHAO, MICHAEL SCHAMROTH, PAUL GITMAN, MARK WEGMAN, TOBY WEGMAN, JOSEPH TRUITT, MIKE SHERMAN, and COREY FISHMAN,<br><br>        Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1.      This action concerns a proposed transaction announced on October 19, 2020 pursuant to which BioSpecifics Technologies Corp. ("BSTC or the "Company") will be acquired by Endo International PLC ("Endo") and Beta Acquisition Corp. ("Beta").

2.      On October 19, 2020, BSTC's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Endo and Beta commenced a tender offer to purchase all of BSTC's outstanding common stock for $ 88.50 per share in cash (the "Tender Offer").

3.      On November 2, 2020, in order to convince BSTC's stockholders to tender

their shares, defendants authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC").

4. The Solicitation Statement omits material information with respect to the Tender Offer, which renders the Solicitation Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(d), 14(e), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

5. In addition, the Tender Offer is scheduled to expire one-minute following 11:59 p.m., Eastern Time, on December 1, 2020 (the "Expiration Time"). It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the Expiration Time so they can properly determine whether to tender their shares.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(d), 14(e) and 20(a) of the 1934 Act and Rule 14d-9.

7. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect

in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of BSTC common stock.

9. Defendant BSTC is a Delaware corporation and a party to the Merger Agreement. BSTC common stock is traded on the NASDAQ under the ticker symbol "BSTC."

10. Defendant Joseph Truitt is Chief Executive Officer and a director of the Company.

11. Defendant Jennifer Chao is Chairman of the Board of the Company.

12. Defendant Michael Schamroth is a director of the Company.

13. Defendant Paul Gitman is a director of the Company.

14. Defendant Mark Wegman is a director of the Company.

15. Defendant Toby Wegman is a director of the Company.

16. Defendant Mike Sherman is a director of the Company.

17. Defendant Corey Fishman is a director of the Company.

## FACTS

18. BSTC is a commercial-stage biopharmaceutical company. The Company discovered and developed a proprietary form of injectable collagenase (CCH) which is

currently marketed by BSTC's partner, Endo International plc (Endo), as XIAFLEX® in the U.S. for the treatment of Dupuytren's contracture and Peyronie's disease. The Company was founded in 1990 with its corporate headquarters at 2 Righter Parkway, Suite 200, Wilmington, Delaware 19803.

19.     Endo develops, manufactures, and distributes prescription pharmaceutical products. The Company offers products for insomnia, pain, urology, men's and women's health, pelvic pain, dermatology, and orthopedics. Endo has global headquarters in Dublin, Ireland and U.S. headquarters in Malvern, Pennsylvania.

20.     On October 19, 2020, BSTCs' Board caused the Company to enter into the Merger Agreement.

21.     According to the press release announcing the Tender Offer:

WILMINGTON, Del., Oct. 19, 2020 /PRNewswire/ -- BioSpecifics Technologies Corp. (NASDAQ: BSTC) announced today that it has entered into a definitive merger agreement under which Endo International plc (NASDAQ: ENDP) will acquire BioSpecifics for an estimated equity value of approximately $658.0 million ($540.0 million in enterprise value net of cash on hand), or $88.50 per share in cash.

The transaction was unanimously approved by both BioSpecifics' and Endo's Boards of Directors and is anticipated to close during the fourth quarter of 2020. "BioSpecifics Technologies Corp. pioneered the development of collagenase-based therapies, which has resulted in a robust injectable collagenase (CCH) portfolio, consisting of XIAFLEX® to treat the vast number of diseases and medical conditions caused by the excess accumulation of collagen and Qwo™ for the treatment of cellulite," said Joseph Truitt, Chief Executive Officer of BioSpecifics.

**Terms of the Agreement**
Under the terms of the merger agreement, Endo, through a wholly-owned subsidiary, will commence an all-cash tender offer for all outstanding shares of BioSpecifics common stock at a price of $88.50 per share. The closing of the tender offer will be subject to a number of conditions, including that a majority of BioSpecifics' shares are tendered in the tender offer, the expiration of the waiting period under antitrust laws and other customary closing conditions.

Promptly following the completion of the tender offer, Endo's acquisition subsidiary will be merged into BioSpecifics, with any remaining shares of BioSpecifics common stock to be canceled and converted into the right to receive consideration of $88.50. The merger agreement includes a remedy of specific performance and is not subject to a financing condition.

**Advisors**

Centerview Partners LLC acted as the exclusive financial advisor to BioSpecifics and Morgan, Lewis & Bockius LLP is serving as legal counsel.

22. The Offer Price is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Tender Offer.

23. It is therefore imperative that the Company's common stockholders receive the material information that defendants have omitted from the Solicitation Statement so that they can meaningfully assess whether to tender their shares.

24. Section 6.2 of the Merger Agreement provides for a no solicitation clause that prevents BSTC from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> (a) Subject to Section 6.2(c), at all times during the period commencing on the date of this Agreement and continuing until the earlier to occur of the termination of this Agreement pursuant to Article IX and the Effective Time, neither the Company nor any of its Subsidiaries shall, nor shall they authorize or permit any of their respective Representatives to, directly or indirectly, (i) solicit, initiate, knowingly encourage, or knowingly facilitate or assist, any inquiry, proposal or offer, or the making, submission or announcement of any inquiry, proposal or offer, that constitutes or would reasonably be expected to lead to an Acquisition Proposal, (ii) make available any non-public information relating to the Company or any of its Subsidiaries, or afford access to the business, properties, assets, books, records or other non-public information, or to any personnel, of the Company or any of its Subsidiaries, in each case, to any Person (other than Parent, Merger Sub or any designees or Representatives of Parent or Merger Sub), in connection with any inquiry, proposal or offer that constitutes or

would reasonably be expected to lead to an Acquisition Proposal, (iii) participate or engage in any discussions or negotiations with any Person with respect to any inquiry, proposal or offer that constitutes, or would reasonably be expected to lead to, an Acquisition Proposal, (iv) adopt, approve or enter into any merger agreement, purchase agreement, letter of intent, memorandum of understanding or similar agreement or Contract with respect to an Acquisition Transaction (other than an Acceptable Confidentiality Agreement), or (v) resolve or agree to do any of the foregoing. Subject to Section 6.2(c), during the period commencing on the date of this Agreement and continuing until the earlier to occur of the termination of this Agreement pursuant to Article IX and the Effective Time, the Company and its Subsidiaries shall, and shall cause its and their Representatives to, immediately cease and cause to be terminated any discussions or negotiations that may be ongoing with any Person (other than Parent, Merger Sub and their Representatives) conducted prior to the date of this Agreement with respect to any inquiry, proposal or offer that constitutes or would reasonably be expected to lead to any Acquisition Proposal. Promptly after the date of this Agreement, the Company will terminate access by any Person (other than Parent, Merger Sub and their Representatives) to any physical or electronic data room relating to a potential Acquisition Proposal (or prior discussions in respect of a potential Acquisition Proposal) and request that each Person (other than Parent, Merger Sub and their Representatives) that has executed a confidentiality agreement (other than the Confidentiality Agreement) relating to a potential Acquisition Proposal (or prior discussions in respect of a potential Acquisition Proposal) promptly return to the Company or destroy all non-public documents and materials containing non-public information of the Company and its Subsidiaries that has been furnished by the Company or any of its Representatives to such Person. Notwithstanding anything to the contrary contained in this Agreement, the Company and its Representatives may inform a Person that has made or is considering making an Acquisition Proposal of the provisions of this Section 6.2.

25. In addition, Section 8.3 of the Merger Agreement requires BSTC to pay a $23,040,000.00 "termination fee" to Endo in the event this agreement is terminated by BSTC and improperly constrains the Company from obtaining a superior offer.

26. Defendants filed the Solicitation Statement with the SEC in connection with the Tender Offer. As alleged herein, the Solicitation Statement omits material information, which renders the Solicitation Statement false and misleading.

27. First, the Solicitation Statement omits material information regarding

BSTC's financial projections.

28.     With respect to BSTC's financial projections, the Solicitation Statement fails to disclose (i) all line items used to calculate EBIT; (ii) a reconciliation of all non-GAAP to GAAP metrics; (iii) projected net income; (iv) the risk adjustments made to the projections, including the "internal assumptions about the probability of technical success and regulatory approvals and commercialization of XIAFLEX® for additional indications and other relevant factors related to the Company's long-range operating plan"; and (v) the unadjusted projections.

29.     The disclosure of projected financial information is material information necessary for BSTC stockholders to gain an understanding of the basis for any projections as to the future financial performance of the company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

30.     Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Centerview Partners LLC ("Centerview").

31.     With respect to Centerview's *Selected Public Company Analysis*, the Solicitation Statement fails to disclose (i) the specific bases for selecting each of the companies observed; and (ii) the individual metrics for each company observed.  This information must be disclosed to make the Solicitation Statement not materially misleading to BTSC stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

32.     With respect to Centerview's *Analyst Price Target Analysis*, the

Solicitation Statement fails to disclose the source of the price target used in the analysis. This information must be disclosed to make the Solicitation Statement not materially misleading to BTSC stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

33. With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the individual inputs and assumptions underlying the range of discount rates from 7.5% to 9.5%; (ii) the forecasted risk-adjusted, after-tax unlevered free cash flows of the Company over the period beginning on January 1, 2021 and ending on December 31, 2028 utilized by Centerview and all underlying line items; (iii) the terminal values of the Company; and (iv) the number of fully diluted outstanding shares of the Company. This information must be disclosed to make the Solicitation Statement not materially misleading to BTSC stockholders and provide stockholders with full and relevant information in considering whether to tender their shares.

34. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

35. The omission of the above-referenced material information renders the Solicitation Statement false and misleading.

36. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(e) OF THE EXCHANGE ACT)

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

39. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

40. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

41. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Tender Offer as set forth above.

42. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

43. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their

shares in connection with the Tender Offer. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

44. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

45. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

46. Because of the false and misleading statements in the Solicitation Statement, plaintiff is threatened with irreparable harm.

47. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(d) OF THE EXCHANGE ACT AND RULE 14d-9 PROMULGATED THEREUNDER)

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

50. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation

or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

51. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

52. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

53. The omissions in the Solicitation Statement are material to plaintiff, and who will be deprived of his right to make a fully informed decision with respect to the Tender Offer if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading

statements contained in the Solicitation filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Tender Offer. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Tender Offer. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

58. In addition, as the Solicitation sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated

Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and 14(d) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Tender Offer;

B. In the event defendants consummate the Tender Offer, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e) and/or 20(d) of the 1934 Act, as well as Rule 14d-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: November 18, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*